May it please the Court, Your Honors. My name is Darren Schwiebert. I represent the appellant, Dina Klein. This is a somewhat unusual appeal because it's an appeal of a summary judgment order in which both sides on appeal agree that the factual determination by the district court was wrong. The district court held that there was a merger between the two appellees. I refer to them as TAG and CMLP and that using that merger factual determination therefore a contractual agreement which is required under Minnesota law moved from TAG to CMLP and therefore CMLP did not violate the FDCPA because it had a written agreement. Counsel, is that a material fact if there was, if the record supports and the district court also find an assignment of the contract here? Well, the court only found that the assignment happened because of the merger. There is no, there is no merger document, there is no assignment document. Well, my recollection is merger was not, I think, mentioned basically in passing in the district court. Am I correct on that? I mean, I don't think it, the whole analysis hinges on the merger. I think it read to me like the district court mentioned it in passing and perhaps grabbed the wrong word, but my recollection may be faulty on that. On page 3, appendix page 3, the court's first determination is that merger took place. Then when it addresses that issue in its opinion on page 9, it says after the merger then all of, all of the assets move because of the merger. You know, the contracts move, the clients moves, everything moves. But what's clear from the current posture of this appeal is both sides agree there's no merger. That didn't happen. Is it disputed that the contracts move though? Is there a material dispute about that? Absolutely, because there is no evidence that the contract that was signed between North Memorial and TAG ever got to CMLP and that's the violation. And the evidence of that, which should have defeated summary judgment, begins with North Memorial, the other side of the contract, testifying that there is no written contract with CMLP. What's the, what's the substantive violation if the contract didn't transfer? What's the source of law there that's being violated? It's 1692 F1 and the reason why it's a violation of F1 is because the CMLP is engaging in collection that is not permitted by law. The law being the Attorney General Agreement, which was entered by a court order which said that North Memorial's collection agencies had to enter into written agreements with North Memorial. There is no, there is no dispute that that's the requirement of the Attorney General Agreement. The magistrate judge in allowing the amendment to add this claim specifically held that was a viable F1 claim. The district court in footnote 3 of his opinion says that he just decides that merger happened and therefore assignment. Keep in mind there is no evidence of merger or integration, and we'll talk about integration in a second, and there's no evidence of the assignment. There's no written agreement. There is simply two affidavits saying this happened, this integration happened. But there's no, there's no document that show that it actually did. And the hospital, North Memorial, which is the other side of this alleged required agreement, testifies unequivocally there is no written agreement with CMLP. That alone should have defeated summary judgment. And this court, recognizing that it's not going to make the same mistake as the district court on merger, has to look at that evidence and decide the summary judgment must be reversed. Because one of the two parties to the agreement says there is no written agreement. The second piece of evidence that's ignored by the appellees in this case, as it was ignored by the district court, is the appellee's interrogatory answers. Now there's one set of answers for both appellees together, and that is signed on February 20th of 2019. And in that interrogatory answer they say we are separate entities with separate contracts and separate clients. That is not merger. That is not integration. That is not that an agreement has been assigned from one to the other. They represented in February 20th of 2019, a year plus after the letters had issued, that they are still separately companies. Totally unrelated, separate entities. And that interrogatory answer, again, establishes a question of fact as to whether or not this assignment, with no evidence, actually took place. The third fact, which is never addressed by the district court, was say there was the initial contract with TAG, then there is this subsequent amendment, and then the second letter came out. The problem is the district court got the timing wrong. The second letter, the letter that comes from CMLP, is in March of 2018. And that appears in appendix 107 and 108. The amendment, whatever it is, and there's problems with it, we talk about it in the of 2018. Now you can't retroactively fix an FDCPA violation. The FDCPA violation existed the minute they sent the letter on February 20th of 2018, not having a written agreement. But that sequence of events takes out the possibility that even this amendment, which is not an agreement with CMLP, could have somehow transferred it over. Because it happens after the lawsuit has already been filed. They're trying to clean it up with this amendment, but that can't fix the violation. Their own account notes, and we talk about this extensively in the brief, show that at the time that there's allegedly this assignment, there's no record in their internal records to show that happened. They do show the accounting open, and they do show when it's assigned from North Memorial to TAG, but there's never any evidence that it moves from TAG to CMLP, or even that TAG moves to CMLP. The Minnesota statutory requirements. Appelle's new theory, having abandoned merger, is integration. There is no corporate form of integration in the statute of Minnesota. It doesn't exist. They're trying to, by affidavit say, with no written agreement, trust us there was an integration and we'll tell you what it means. The problem with their theory is that the Minnesota statute says that if you're going to move all your assets, which is what they allege the integration is, you must do it for consideration. And they admit there was no consideration. TAG got nothing. So under this reconstructed integration, all of the assets, including the contract, allegedly moved from one to the other, but nothing moves back the other way. Which means under Minnesota statutory law, this is where it initially began, which is with TAG. Now, once the court recognizes there's at least a question of fact, particularly in light of the hospital's testimony, there is no written contract. That means that their summary judgment should have been denied on the issue of the F-1 claim for violation of the attorney general agreement, which appears in the appendix at 59 to 78. The specific requirement appears in paragraph 15 at appendix 66. The second FDCPA violation is the language in the letter that CMLP sent that says that it was turned over by our client, turned over by North Memorial. They admit that's what it means. But this account was never, even in their own admission, turned over by North Memorial. Their view of the events is that it was turned over to TAG and that it was integrated and somehow moved from TAG to CMLP. That makes the statement in the letter false. And the statement is a violation of 1692E, 2 and 5 and 10, because it's a false statement in the attempt to collect a debt. There isn't any dispute by them that that statement is false. All they say is it's not a material fact. Of course it's a material fact. Counsel, is the point here that you're making that CMLP engaged in the debt collection activity without the permission of the hospital? It's not a question of permission. It's a question of the fact that the attorney general agreement requires a written agreement. Permission is not enough under the law in Minnesota. If you are going to be a debt collector for a hospital on a written agreement, that's what Judge Tuneheim held. That's what the magistrate judge in this court held. That's what the judge in this case held in footnote three. You must have that written agreement. It's not simply enough to say they said it was okay. What's required is that you have the written agreement. And there is, at a minimum, conflicting evidence on the written agreement, on the treasure regulation claim. Counsel, what's the best case where a court found an FDCPA violation on that theory? Where, in other words, the FAP requirements and the written agreement apply to the hospitals, right, on their face. What's the best case that then applies that to a debt collector trying to collect a debt on behalf of a public hospital? It's Klein v. Stewart, Zleiman & Junger. It's 2019 U.S. District Court Lexis 361. And it's the same attorney general agreement. And it's holding that the hospital's provisions applied to the debt collector and that their violation of it was an F1 claim. The magistrate judge in this case, in granting the motion to amend, applies that case and specifically holds the credit management's alleged collection of a debt for North Memorial without a written contract in violation of the AG agreement constitutes a viable 1692 F1 claim. That's not appealed by them to the district court. That's the law of this case, that if they engaged in it without the written agreement, it is a violation of F1. They didn't appeal it to the Article III judge then. They didn't appeal it to this court. They are stuck with that judicial determination. It's also consistent with the other rulings that that would be an F1 violation. Counsel, I want to ask you about the, I think you were talking about it a few minutes ago, the turned over point that the accounts were turned over to credit management. And doesn't that kind of depend on the assignment claim? Because turnover is imprecise. But if there truly was an assignment, turnover is a So doesn't it kind of depend on what we, what we do with the first claim? No, because the alleged assignment they rely on is from TAG to CMLP. It's not from North Memorial to CMLP. So even if you say that somehow they were able to assign from TAG to CMLP, the account is still not turned over by North Memorial. It would be turned over by North Memorial to TAG. And then I guess turned over by TAG to CMLP, but that's not the language of the letter. The language of the letter suggests that it was turned over to them by their client, which is not TAG. Their client is North Memorial. And Dina Klein testified that that language in the letter was important to her because she thought they were ratcheting up their effort and they were unhappy with TAG and their inability to collect from her. So you think that arises to the level of false rather than just imprecise? I believe it is. It is false and deceptive, Your Honor. She testified that it was deceptive to her and the district court ignored that, which would be another reason to reverse the district court's determination on it. One thing that's interesting statutorily about this is you have deceptive means and false representations. Are means acts or are they representations or are they both? And the reason why I say that is when you use different language in a statute, you assume they mean different things. And if you're talking about a representation here, presumably maybe it only needs to be false. And the means refers to something else. A false representation would be sufficient to be a violation. I agree with that. But do you think they describe different things? Deceptive means and false representation? In other words, representation means being different things. A deceptive mean could be a representation. A deceptive means could be conduct. I think a deceptive means could be multiple things, but I still think it would be a violation. On the treasure obligation, the entire issue boils down to one question. Can the debt collector do what the hospital cannot? Under agency law in Minnesota, under assignment law in Minnesota, they can't. And if they can't do it, it's a violation of the FDCPA. Thank you. All right. Mr. Martin. Mr. Martin, you're going to have to unmute your mic. I probably knew that should have happened. Good morning, Your Honors. Xerxes Martin on behalf of Appalese. The authority and evidence before this court showed Judge Frank ruled correctly in granting Appalese motion for summary judgment, and we ask that this court affirm his order. Rather than going off script of each of the claims in this instance, I'll try to address Mr. Schwiebert's arguments in this instance. One thing that I want to point out first is what Judge Kovas referred to is I believe with Judge Kovas that Judge Frank used the term merger in passing. Just as in credit management's affidavit before this court and at summary judgment, merger was not intended to be given the legal term of two businesses combining as one, such as law firms merging or big tech companies merging, as simply the operations and contracts. There's plenty of evidence before this court to show that what happened was in 2014, a company called the CMI Group purchased TAG. TAG operated on its own until the decision was made for TAG to be incorporated or integrated into credit management. That decision was triggered on January 1st, 2018, where essentially all of the assets of TAG were transferred to credit management LP, and essentially the lights were turned off on TAG. The company still existed, still had a collection license, still had a tax ID and everything, but the lights were turned off and the operations were now operating under credit management LP. So was there evidence in the record that indicated that TAG still had its ongoing accounts, separate accounts from the other organization? The counsel has suggested that's the case in the context of a potential factual dispute. So I'm not quite sure what opposing counsel is referring to for that. I think it was a deposition testimony, wasn't it? The affidavit submitted by credit management and TAG support the fact that collection activity. He did refer to the account notes trying to say that the account notes don't reflect a transfer of the account or anything like that, but that's asking for, oh, you must have evidence of this happening in there, but that's not something that would necessarily be notated in that. What the evidence really shows is credit management now has account notes on this account and is handling this account appropriately. The TAG account notes don't have any further collection on them, and what happens is after TAG had sent the letter in November of 2017, nothing else happened on the account. The transfer between the two companies happened, and then credit management sent out a letter in March of 2018. She did not receive any additional communications from TAG, and she received a letter from credit management, and then really the next activity was the receipt of this lawsuit by credit management and TAG. Council, do you think the violation of the Minnesota consent decree by a debt collector is an F1 violation? I disagree with that. I know opposing counsel effectively hangs his hat on Judge Thunheim's order in the other Klein case, same plaintiff, same appellant, but the timing of that order by Judge Thunheim was at the motion to dismiss stage. That is not an order to say that this is a violation of the FDCPA. He only ruled that it poses a potential violation of the FDCPA, or it is a viable claim to survive the motion to dismiss stage. Opposing counsel also hangs his hat on the magistrate in this particular case, essentially saying the same thing as Judge Thunheim did, that plaintiff has, I think, to show a viable claim under the FDCPA, and the magistrate's order or language in that was given in a motion to amend. A little bit of factual basis or background is this entire case originally started with just the claims of the financial assistance plan not being in the letter. After discovery, the attorney general's claims came around, and I think that actually goes a bit into Judge Shepard's inquiry in the first case today about standing, is this attorney general's consent order and everything is really background information that plaintiff did not know about and has no effect on her, and so it's hard to say or see how there is any injury in fact caused by this whole story of the attorney general's order. And if it's something that's discovered after the fact, how was there any harm when she simply received a letter? But going back to the attorney general's order and whether or not that is a potential violation of F-1, I disagree that it cannot be a violation of F-1 because the attorney general's consent order is not a law. Minnesota government is structured as a federal government. You have legislative branch, executive branch, and judicial branch. The legislative branch is the one that creates the law and writes the law. The attorney general or the executive branch, which the attorney general's office falls under, is there to enforce or enforce compliance with the law. The consent order in this case is not a law to create a violation of the FDCPA and specifically section F-1. Although, does it make a difference that my understanding of this is that the statute says violation of law versus violation of a law? I don't think that changes anything because, again, the attorney general's office does not write law and the legislative branch does. The, there is not any other supplemental law argument, state law claim that plaintiff brings to make that a violation of law to fit under the box of F-1. The reason why I ask that is because suppose there's a judicial order that says that it joins a party, says you cannot do X and that party does X. Would that be a violation of law? Could you give me a little bit more information on what you mean by judicial order? So, suppose there's a judicial order that says you cannot use your name in debt collection letters or whatever, you know, just to throw that out. And the debt collector does precisely that. Would that be a violation of law? I mean, that's a terrible example because it's the opposite of what the statute says, but humor me. I'm trying to, as you said, it's a rough example. I'm struggling with it as well. The best. Or the opposite. You must use your name. You must absolutely positively use your name. And you must put the following five caveats when you're a debt collector. The following five things must be shown and they refuse to do that. Violation of law. I think it would take another judicial determination by another court to see if another court reaches the same conclusion. Because really, I think with your hypothetical, we're really talking about the court saying you have to include those five things, your name, not use your name. I think that ruling has to come from a law in the first place. I wish I could give you a precise answer on that, but I'm struggling with it. Turning to the financial assistance plan claims, I think those are the easiest for this court to handle in that there is no law, even the treasury regulation itself, that applies this to collection agencies. What about the argument that general agency and assignment principles suggest that the hospital can't assign away, you know, it can only assign its own obligations and responsibilities. And here it has responsibilities under the treasury regs, so those should apply to the debt collectors as well. I think that was, I maybe summarized it poorly, but I think counsel's argument is along those lines. So, a little preface to that, and I think it goes to some of the other claims in this case, is regarding this assignment. Appellant on one hand is wanting to say that this debt and all of its rights to collect and everything were assigned to credit management by North Memorial Health Care. And under that theory, then that erases his claims that credit management had no authority to collect this debt from North Memorial Health Care. And so he's kind of on both sides of the fence with this about assignment, which is a bit peculiar. But regarding the assignment, there are limited rights transferred in just the collection agreement. The collection agreement is part of the court's record, but looking at the treasury regulation, the treasury regulation is specific to that regulation applies to not-for-profit hospitals and health care providers that operate hospital facilities. There's no way that credit management or TAG fall under that umbrella in any way. If Congress wanted this to apply to the collection agencies, it could have specified that. It did not. It is completely absent on it. I know that in Appellant's reply brief, he cites to the Affordable Care Act to try to support his position on this. However, the section of that simply states that if an account, and paraphrasing, if an account is potentially turned over to a collection agency, they have to have reasonable procedures informing of a financial assistance program. However, in this particular case, we are looking at a very vacuum situation where the only activity that took place on this was a collection letter sent. This client had zero communications with TAG. She had zero communications with credit management LP. All she did was she received a letter from TAG and she received a letter from credit management LP. No action was taken on either of those letters besides the receipt of this lawsuit later on. But again, just the statutory language in the treasury regulation regarding the management LP. The debts are simply assigned to credit management LP or TAG for collections. That activity is limited to collection activity. And it is not to disclose the procedures, all of the kind of nuts and bolts of what happened with the health care provided to Ms. Klein. That is on the hospital side. That is what the treasury regulations apply to. In conclusion, we assert that Judge Frank was correct to find there was no violation of the FDCPA. There is no authority to hold the treasury requirements apply to collection agencies. It just makes no sense and opposing counsel has zero authority to show that. In all honesty, if those treasury regulations applied, we would have seen many of these cases forever ago when those treasury regulations were enacted and then the financial assistance program language would be in every initial collection letter from agencies. It is just not there. That is not how the law has been interpreted. And this is one of the only cases where this argument is being asserted. Regarding the assignments, contractual rights, authority to collect, the evidence is before this court regarding those contracts. While opposing counsel tries to hang his hat on North Memorial Health Care's representative testifying there is no written contract between North Memorial Health Care and credit management. That snippet of testimony ignores that there was the original contract between TAG and North Memorial Health Care. CMI group purchased TAG and TAG and then credit management were under common ownership. The assets of TAG were transferred or signed to credit management and then TAG with credit management LP. North Memorial Health Care never objected to any of that. The assignment was valid when it was transferred on January 1, 2018. And there is no issue of authority to collect, of violation of the AG order. And then one thing I forgot to mention earlier about the AG order is there is also it being an AG's order, there is no private right to enforce, which goes a lot, it is a law. Last, a small additional claim that appellant brings is TAG falsely representing itself as credit management in the second letter. The evidence of supports does not support that. TAG and credit management were separate companies and then collection activity resumed under credit management. And the record supports Judge Frank's order. This court should affirm the district court's opinion. All right. Thank you, counsel. All right. Mr. Schwieber, you may sum up. Let me see if I get through. The question about them having their own account comes up in their interrogatory answer on March 20th of 2019. That's at appendix 278. Counsel's making a standing argument they didn't make in their brief. I'd refer the court to the DMRA, which is an FDCPA standing case. That's an 869 F3 685 that's cited in our briefs. This is a court order. We keep calling it the attorney general agreement, but if you turn to the last page of it, it's actually entered by the court. The question that your honor asked is brilliant because it's a court order saying you must have a written agreement. They didn't do it. That's a violation of law. He's conceded it in his own hypothetical. They talk about the fact that there was just the letter and nothing else. The letter was the collection agency, and 6092 F says an attempt to collect or a collection. There doesn't actually have to be a recovery of any money. He says that the North Memorial snippet, I love that term, isn't enough, but North Memorial testifies as one half of this alleged agreement. We don't have a written agreement with them. North Memorial understands their obligation, and they testified under oath we don't have an agreement with them. He talks about no private right of action that's addressed in Tuneheim's decision. The court weighed the evidence, which is what it should not have done. There was evidence to prevent summary judgment. Thank you. All right. Thank you very much, counsel, for your presentations. The case is submitted, and the court will render a decision in due course.